UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
DEC 29 2016

| DEBRA-LYN CLAYTON,<br>Plaintiff,<br><br>vs.<br><br>SIOUX STEEL COMPANY.<br>Defendants. | CIV. 16 - 4179<br><br><br>COMPLAINT |
|---|---|

Comes now, Plaintiff, Debra-lyn Clayton ("Ms.Clayton"), through her attorney and respectfully alleges the following for her Complaint against Defendant Sioux Steel Company:

## JURISDICTION

1. Plaintiff, Debra-lyn Clayton, is an individual residing in Minnehaha County, State of South Dakota.

2. Defendant Sioux Steel Company, hereinafter referenced as "**SIOUX STEEL**", is a corporation located in Minnehaha County, State of South Dakota.

3. This Court has Jurisdiction over this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, hereinafter "Title VII," per 42 U.S.C. § 2100e-5(f)(3).

4. Venue is proper in accordance with 28 U.S.C. § 139 (b).

## DISCRIMINATION CHARGE FILED WITH EEOC

5. PLAINTIFF timely filed a Charge of Discrimination with Sioux Falls department of Human Relations in Sioux Falls in May of 2015. Following the Sioux Falls proceedings, and their denial of a claim, the file was forwarded to the U.S. Equal Employment Opportunity Commission ("EEOC") on or about September 12, 2015. (See Exhibit 1). Ms. Embry received a Letter of Determination and "Notification of Right to Sue" on or about October 2, 2016. (See Exhibit 2).

6. The EEOC announced, that they were affirming the findings of the Sioux Falls commission. Included with the EEOC determination was the right to sue the respondent, Sioux Steel Company, DEFENDANT herein.

1

DISCRIMINATION IN VIOLATION OF TITLE VII

7. Ms. Clayton began employment as a Control Clerk at SIOUX STEEL shipping department on or about March 15, 2010.

8. The PLAINTIFF's duties included coordination of receiving operations, delivery operations, as well as internal production for future shipments and material and parts receiving. Ms. Clayton produced internal and external reports, coordinated operations, and directed support staff. Her facilitation included face to face meetings with employees, supervisors, as well as customers and clients.

9. Plaintiff is a woman, over the age of 40, as well as of Asian American decent. As such, she is a member of several protected classes as defined by acts of congress.

10. During the course of employment at DEFENDANT's Sioux Falls operations center, Ms. Clayton was intimidated, harassed, and discriminated against, predominantly by the "Shipping and Hardware" employees of Sioux Steel as demonstrated (but not limited to) by the following events:

    a. Employee generated statements accusing Plaintiff of participating in sexual activities in the woman's restrooms at work while on the clock;
    b. Employee generated reports of having affairs at work, stemming from Ms. Clayton's habit of coming to work early and leaving late as "comp time" for other work periods;
    c. Employee generated claims of cheating on an "in-house" weight loss challenge designed to improve employee health, which was disputed by Plaintiff's supervisor Craig Stein but disregarded by DEFENDANT in that the Human Relations department staff did not believe Mr. Stein's position;
    d. Employer generated (Randy Iverson) (false) accusation of breaking the leg of a Plains Express driver;
    e. Falsely accused of being a lesbian by Justin Wulf in the presence of Holly Schoeberl;
    f. Hardware Department employees of DEFENDANT tampering with Ms. Clayton's work area;
    g. Shipping employees of DEFENDANT tampering with Ms. Clayton's work area;
    h. Accused (falsely) of assaulting an employee of DEFENDANT in March of 2015;
    i. Accused (falsely) of performing surveillance operations directed against Greg Pina (of Shipping) and separately of such operations directed against Kristen Renae Grout (of Hardware).

11. The continuous behavior as outlined above indicates a focused, intentional and systematic plan all designed to circumvent the rules imposed on DEFENDANT by the federal government all intending to provide a threat and discrimination free work place to PLAINTIFF.

12. The above behavior was initially brought to the attention of Ms. Clayton's supervisor, who intervened with the other employees and the behavior appeared to cease. However, when Ms. Clayton's supervisor was re-assigned within Sioux Steel (Aug 2014), the behavior resumed.

13. Ms. Clayton informed supervisory staff of Sioux Steel of the continuing sexual harassment through the fall of 2014. Ultimately informing Michael Steel (COO Sioux Steel) of the behavior and the lack of company response in December 2014.

14. Michael Steel, COO of Sioux Steel, developed a plan to re-assign Ms. Clayton, and shared that plan with Ms. Clayton in December 2014 to January of 2015. The plan effect was to remove Ms. Clayton from the harmful and harassing situation.

15. At one point during Ms. Clayton's employ, she was on the phone with the shipping department in Lennox, performing normal work duties, when the conversation was interrupted by a loud exclamation following by a sharp detonation sound which later proved to be the firing of a gun which killed the employee in Lennox ("Shooting Incident"). PLAINTIFF was severely traumatized by this event, and was provided counseling services. PLAINTIFF continues to this day to be traumatized by loud noises, and sharp interchanges of orders.

16. Michael Steel's plan was to have Ms. Clayton train Jean Simonton to replace Ms. Clayton. It was the plan of Sioux Steel to have Ms. Clayton train Ms Simonton without speaking to her. Ultimately, Sioux Steel fired Ms. Clayton since she "willfully failed to follow directives" in that Ms. Clayton did in fact communicate with Ms Simonton.

17. The absurdity of the plan is obvious, and further clearly demonstrates that Sioux Steel concluded that Ms. Claytons employment was so severely impacted by the harassing behavior of other employees that Ms. Clayton needed to be re-assigned. The reassignment plan required a training situation to be executed whereby Ms. Clayton would not communicate with the person she was to train. When Ms. Clayton did communicate with her trainee, she was fired.

18. The emotional impact of the continuous and systematic harassments of Ms. Clayton have been exacerbated by Shooting Incident, and through professional psychiatric care she has been diagnosed to suffer from Depression, Post Traumatic Stress Disorder, as well as other emotional and psychiatric abnormalities by professional psychoanalysts such as Dr Thomas Price, MD. PhD.

19. Ms. Clayton is unable to maintain completely supportive employment.

20. Ms. Clayton is currently being treated by professional counselors and a psychiatrist for emotional and physical injuries suffered at the hands of the defendant.

21. The overall atmosphere at SIOUX STEEL was hostile, discriminatory, and filled with

anger. This created a hostile atmosphere in that the use of sexually derogatory language, fabrication of episodes directed against Plaintiff, was supported or tolerated by Sioux Steel.

## DISCRIMINATION UNDER TITLE VII

22. Ms. Clayton re-alleges the forgoing numbered paragraphs as though they were fully stated in this paragraph.

23. To establish a claim for discrimination based on race or protected class, a plaintiff must establish the following prima facie elements:

    a. The employee is in a protected class (based on race).
    b. The employee was qualified for the position.
    c. The employee was rejected for the position -- in other words, the applicant was not hired, or the employee was not promoted or was fired.
    d. An employee outside of the protected class was promoted, supported or allowed to harass without intervention by the employer.

24. Ms. Clayton (a woman) is Asian American, and thereby belonging to a protected class under Title VII.

25. Ms. Clayton was subjected to discrimination, constructive interference with her ability to earn a living, and ultimately terminated by her employer, SIOUX STEEL. The particularities are listed above.

26. Ms. Clayton was qualified for her position as Control Clerk, having earned a rating of "meeting expectations" by her last supervisor, Craig Stein, in a periodic employment review.

27. The scheme as described above, concocted by employees of SIOUX STEEL, and then allowed to perpetrate by SIOUX STEEL, and not stopped or effectively addressed by SIOUX STEEL, thereby effectively discriminated against Ms. Clayton by constituting an effective termination based on Ms. Clayton's race, African American as well as her sex, as a woman.

## SEXUAL HARASSMENT UNDER TITLE VII

28. Ms. Clayton re-alleges the forgoing numbered paragraphs as though they were fully stated in this paragraph.

29. To establish a claim for discriminatory creation of a hostile work environment based on sex, a plaintiff must establish the following prima facie elements:

4

    a. The employee is in a protected class (based on race);
    b. The employee was subjected to unwelcome sexual harassment;
    c. The harassment was based on employee's sex;
    d. The harassment affected a term, condition or privilege of employment; and
    e. The employer knew, or should have known about the hostility and failed to take remedial action.

30. Ms. Clayton is an Asian American, a protected class of race of human being.

31. The Sioux Falls Human Relations Commission (below) concluded that Ms. Clayton was subjected to unwelcome sexual harassment when she was subjected to the auditory reception of the sexual allegations made by the other employees, subjected to false accusations, ridiculed and subjected to offensive actions by Sioux Steel employees and that the harassment was linked to Ms. Clayton's protected class.

32. Ms. Clayton has the basic human right to be free in the work place from being insulted, and harassed by the sexual proclivity accusations in the work place. When Michael Steel took action (developing the plan to reassign Ms. Clayton), he was confirming that the behavior affected her employment.

33. By not intervening, SIOUX STEEL condoned, and even approved of, the exercising of insulting and offensive behavior.

## RETALIATION UNDER TITLE VII

34. Ms. Clayton re-alleges all the preceding paragraphs, as though they were stated in this paragraph.

35. To establish a claim for retaliation under Title VII, a plaintiff must show that:
    a. The plaintiff was engaged in or was engaging in a protected activity under federal law;
    b. The employer subjected the plaintiff to an adverse employment action; and
    c. The plaintiff was subjected to the adverse employment action because of her participation in the protected activity.

36. Ms. Clayton engaged in activity protected under federal law by reporting to her immediate supervisor, as well as the general manager, that employees of SIOUX STEEL were discriminating against her by addressing her with sexual epithets, accusing her of sexual impropriety, and otherwise harassing her on many occasions.

37. This action came to a crescendo in March of 2015. Ms. Clayton was called to the table when she communicated with the person Michael Steel directed her to train, Jean Simonton, and terminated.

38. It is clear that Ms. Clayton was terminated by Sioux Steel as a reaction to Ms. Clayton's presentation of the allegations of Sexual Harassment.

39. SIOUX STEEL's behavior, whether being acts of omission or acts of commission, were willful, reckless, malicious and illegal, all directed against their employee Ms. Clayton, directly and proximately resulting in her suffering monetary loss, severe emotional distress, emotional pain, mental anguish, and other non pecuniary losses that will be established at a trial on the merits.

## ATTORNEY FEES

40. Ms. Clayton re-alleges all the preceding paragraphs, as though they were stated in this paragraph.

41. Under 42 U.S.C. Section 2000e-5(k), the court may award attorney fees to the party that prevails in bringing a lawsuit under Title VII.

42. Attorney fees should be awarded to Ms. Clayton once she prevails in her claim under Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Debra-lyn Clayton, respectfully requests that the actions of the Defendant, Sioux Steel Company, be declared unlawful and enter a judgment in her favor and against Defendant(s), and award:

1. Compensatory damages, including for emotional distress, as the evidence at trial may show;

2. Damages against Defendant including (but not limited to) those damages allowed by Title VII of the Civil Rights Act of 1964 and 42 U.S.C. section 2000 et seq. and any other pertinent and applicable statute, rule or regulation;

3. Punitive and exemplary damages in such amount as the evidence at trial may show and as allowed by law;

4. Attorney fees and costs;

5. Other such and further relief as to this court may seem appropriate.

DATED this 29 day of Dec 2016

_____
Debra-lyn Clayton

_____
Peter Bendorf
*Attorney for Debi Clayton*
Bendorf Law Firm, Prof. LLC
625 S Minnesota
Suite 101
Sioux Falls, SD 57104
605-838-0826 (V)
605-372-8072 (F)
peter@bendorflaw.com

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE