UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DEBRA-LYN CLAYTON,<br><br>                            Plaintiff,<br><br>      vs.<br><br>SIOUX STEEL COMPANY,<br><br>                           Defendant. | 4:16-CV-04179-RAL<br><br><br>OPINION AND ORDER GRANTING<br>DEFENDANT'S MOTION FOR SUMMARY<br>JUDGMENT |

Plaintiff Debra-Lyn Clayton (Clayton) sued her former employer Defendant Sioux Steel

Company (Sioux Steel) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Doc. 1. She asserted claims for racial discrimination, sex discrimination, sexual harassment, and

retaliation.[1] Doc. 1. Sioux Steel has moved for summary judgment on all claims, Doc. 13, which

Clayton opposed, Doc. 18. For the reasons explained below, this Court grants Sioux Steel's motion

for summary judgment.

I.      **Fact Not Subject to Genuine Dispute[2]**

---

[1] While Clayton's complaint states she is over forty years old, she did not claim any violations of
the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* She presented no evidence
that she was discriminated against because of her age in her Charge of Discrimination filed with
the EEOC or in her complaint, deposition, or brief filed with this Court in opposition to summary
judgment. Therefore, this Court will not address age discrimination.
[2] This Court takes the facts in the light most favorable to Clayton as the nonmoving party and
draws the facts primarily from the portion of Sioux Steel's Statement of Undisputed Material Facts,
Doc. 14, that was not genuinely disputed in Clayton's Response to Defendant's Statement of
Undisputed Material Facts, Doc. 19. Clayton raised a hearsay objection to a number of employee
statements from an investigative report, Exhibit D, Doc. 16-1, and emails, Exhibit E, Doc. 16-2,
submitted by Sioux Steel. Clayton did not elaborate on her hearsay objection or provide evidence
to refute the content of the exhibits. Doc. 19. The standard at the summary judgment stage is
whether the evidence "*could* be presented at trial in an admissible form." Gannon Int'l Ltd. v.
Blocker, 684 F.3d 785, 793 (8th Cir. 2012). The information in the investigative report and emails

On March 15, 2010, Clayton began employment with Sioux Steel as a shipping clerk. Doc. 14 at ¶ 1; Doc. 19 at ¶ 1. Part of Clayton's job duties were to produce internal and external reports, coordinate operations, and direct support staff. Doc. 1 at ¶ 8. Clayton's position also required her to have interactions with co-workers, customers, and third-party vendors. Doc. 1 at ¶ 8; Doc. 14 at ¶ 2; Doc. 19 at ¶ 2.

Clayton identifies several incidents at work to support her claims. First, in 2013 or 2014, a supervisor[3] made a statement to another co-worker about Clayton engaging in sexual activities with men in the woman's restroom at work. Doc. 1 at ¶ 10; Doc. 15-1 at 26. Clayton confronted the supervisor and the supervisor stated he would stop making such statements. Doc. 15-1 at 26. Clayton never heard the statement again and did not to report the incident to Human Resources (HR). Doc. 15-1 at 26.

---

could be admissible by having the employees testify directly about their statements and email messages. Moreover, the investigative report appears to be otherwise admissible for two reasons. First, Sioux Steel offered the document to demonstrate it conducted an investigation into the March 26, 2015 incident that led to Clayton's termination and to disclose the information Sioux Steel relied on when making its decision. To that extent, the report would not be offered to prove the truthfulness of the statements asserted in the report. Contra Fed. R. Evid. 801(c). Second, the report could be admissible under an exception to the hearsay rule. The report is a document prepared by Sioux Steel's Human Resources (HR) manager, Juli Jess, and details HR's investigation into the March 26, 2015 incident. The contemporaneous report summarizes Jess's interviews of several employee-witnesses. Doc. 22 at ¶ 4. To that extent, the report could be a business record of Sioux Steel kept in the normal course of business. Doc. 22 at ¶¶ 5–6; see Crimm v. Mo. Pac. R.R. Co., 750 F.2d 703, 709 (8th Cir. 1984) (handwritten notes and an investigative report prepared by HR employee based on employee's investigation of plaintiff's internal complaint, including interviews with employees, was admissible at summary judgment under the business records exception to the hearsay rule) (citing Fed. R. Evid. 803(6) (business records exception)). Because the investigative report is not being offered for the truth of the matters asserted, could be admissible under the business records exception to the hearsay rule, and could be presented in an admissible form at trial, this Court will consider as undisputed portions of Sioux Steel's Statement of Undisputed Material Facts based on the report that Clayton contests only on hearsay grounds.

[3] Clayton could not remember Supervisor Ron's last name and it does not appear that anyone named Ron was Clayton's supervisor. Doc. 15-1 at 26–27.

Sometime during this same period, co-worker Autrie Kimble (Kimble) told other co-workers that Clayton was having affairs at work. Doc. 1 at ¶ 10; Doc. 15-1 at 26. Clayton was told by a co-worker about the statement made by Kimble, and then never heard the comment again. Doc. 15-1 at 26–27. Clayton's supervisor knew Clayton was upset for some reason, but Clayton declined to disclose to the supervisor why she was upset because Kimble is associated with Clayton's ex-husband. Doc. 15-1 at 27.

Also in 2013 or 2014, during an "in-house" weight loss challenged designed to improve employee health, co-worker Sarah Larson (Larson) approached Clayton and asked her if she cheated by wearing ankle weights during a weigh in. Doc. 1 at ¶ 10; Doc. 15-1 at 27. Clayton stated in her deposition that Larson approached her and asked her about cheating "because she got caught, too." Doc. 1 at ¶ 10; Doc. 15-1 at 27. Clayton reported this conversation to Supervisor Craig Stein (Stein) who discussed the situation with HR. Doc. 15-1 at 27. Clayton was required to re-weigh in, but she did not hear the rumor again. Doc. 15-1 at 27. Clayton admitted in her deposition that she has "no idea" how this incident is related to race or sex discrimination. Doc. 15-1 at 27.

On December 16, 2014, co-worker Justin Wulf (Wulf) stated to Clayton, "I was told you're a lesbian. Are you a lesbian?" Doc. 1 at ¶ 10; Doc. 15-1 at 28. Wulf explained that the reason he asked was because co-worker Troy Brown (Brown) told him that Clayton was a lesbian. Doc. 15-1 at 28. Clayton confronted Brown about his alleged statements, and Brown then complained to Sioux Steel management about Clayton because he felt threatened by Clayton. Doc. 14 at ¶ 44; Doc. 19 at ¶ 44. Shipping Manager Dan Lueders (Lueders) and Director of Human Resources Juli Jess[4] (Jess) met with Clayton to obtain her account of the encounter. Doc. 14 at ¶ 45; Doc. 19 at

---

[4] Juli Jess was formerly known as Juli Moeller.

¶ 45. Clayton was advised to report this type of conduct to management should it occur again to allow management to initiate appropriate review. Doc. 14 at ¶ 45; Doc. 19 at ¶ 45. Wulf received a Final Conduct Corrective action on December 18, 2014, for sharing rumors and disrupting the workplace by asking Clayton if she was a lesbian. Doc. 14 at ¶ 47; Doc. 19 at ¶ 47. On December 19, 2014, Clayton received a Final Conduct Corrective Action for conducting her own investigation in a threatening manner. Doc. 14 at ¶ 46; Doc. 19 at ¶ 46.

In January 2015, co-worker Ibrahim Ibrahim (Ibrahim) was speaking Arabic on the phone to his mother overseas. Doc. 14 at ¶ 49; Doc. 15-1 at 35. After Ibrahim ended the conversation, Clayton said: "Why can't you just talk English so we can understand?"[5] Doc. 15-1 at 35. On February 10, 2015, following an investigation into this incident, Clayton received a Final Conduct Corrective Action for making inappropriate statements. Doc. 14 at ¶ 50; Doc. 19 at ¶ 50.

Clayton, in her brief in opposition to summary judgment, pointed to three other incidents she discussed in her deposition to support her claims. Doc. 20 at 2–3, 4. As to the first incident, Clayton asserts "Employer generated (Randy Iverson) (false) accusation of breaking the leg of a Plains Express driver." Doc. 1 at ¶ 10; Doc. 15-1 at 28. Clayton testified in her deposition that someone asked her if she broke a driver's leg because Iverson said she did. Doc. 15-1 at 28. Clayton confronted Iverson, and he said it was a joke. Clayton stated that she did not find the comment funny. Doc. 15-1 at 28. Iverson apologized, and Clayton never heard the accusation again. Doc. 15-1 at 28.

---

[5] This Court is taking Clayton's account of what she said as true here. Sioux Steel contends that Clayton's comment as reported to HR was "[t]hose people need to learn to speak English, so others can understand them. If they are in this country, they need to speak in English." Doc. 14 at ¶ 49. There is a dispute of facts here, but it is not material to any issue relating to granting Sioux Steel's motion for summary judgment.

Second, Clayton testified in her deposition that co-workers were tampering with her work area. Doc. 15-1 at 29. Clayton stated that co-workers would unplug wires to her computer and take candy out of her desk when she was away from her desk. Doc. 15-1 at 29. Clayton did not report any such incidents to HR because she considered them to be minor. Doc. 15-1 at 30.

Lastly, Clayton asserts she was accused of performing surveillance operations directed against co-workers Greg Pina (Pina) and Kristen Grout (Grout). Doc. 1 at ¶ 10; Doc. 15-1 at 28–30. Clayton said she timed Pina when he went outside to see how long it took him to perform a task because she believed he was smoking outside. Doc. 15-1 at 30. Clayton also took a picture of Pina breaking into a different co-worker's desk as a joke. Doc. 15-1 at 29. Clayton did not bring this picture to HR but instead posted it on Facebook. Doc. 15-1 at 29. Regarding the accusation from Grout, Grout approached Clayton and accused her of taking pictures of her, which Clayton denied. Doc. 15-1 at 28. However, Clayton took pictures of cigarette butts, gave the pictures to HR, and reported different co-workers for smoking on the premises. Doc. 15-1 at 28.

In early 2015, Sioux Steel assigned Clayton and three other co-workers to different positions. Doc. 14 at ¶ 3; Doc. 19 at ¶ 3. Clayton was moved to an administrative position with the warranty and transportation department. Doc. 14 at ¶ 4; Doc. 19 at ¶ 4. On February 23, 2015, Jean Simonton (Simonton) was moved from Sioux Steel's Lennox, South Dakota facility to take over Clayton's shipping clerk position in the Sioux Falls, South Dakota facility. Doc. 14 at ¶¶ 5–6. Clayton was assigned to train Simonton on her new position. Doc. 14 at ¶ 7; Doc. 19 at ¶ 7. Clayton stated that she was not going to let Simonton mess up the process she had in place. Doc. 15-1 at 12.

On the morning of March 26, 2015, Clayton and Simonton had an altercation. Doc. 14 at ¶ 11; Doc. 15-1 at 16; Doc. 19 at ¶ 11. Clayton entered Simonton's office to tell her she "messed

up the schedule." Doc. 15-1 at 16; Doc. 16-1 at 1. As Clayton entered the office, she approached Simonton who was sitting at her desk. Doc. 15-1 at 17. Clayton came around the desk to look at Simonton's screen and asked her to pull up the schedule. Doc. 15-1 at 17. Clayton asked her three times what was wrong with the schedule and then explained to Simonton what was wrong. Doc. 16-1 at 1; Doc. 15-1 at 17. At the end of the encounter, Clayton told Simonton to stop telling people that she was not training her. Doc. 15-1 at 16. Clayton was angry with Simonton because she had heard that Simonton was complaining to other co-workers about her training. Doc. 14 at ¶ 14; Doc. 19 at ¶ 14. Simonton felt that Clayton's words and conduct were threatening and sent out a facility-wide page asking for help from HR or the chief operating officer. Doc. 14 at ¶ 13; Doc. 15-1 at 18. Simonton reported that she felt unsafe after the conversation with Clayton escalated. Doc. 14 at ¶¶ 11–12; Doc. 16-1 at 1.

Jess immediately began an investigation into the incident. Doc. 14 at ¶ 15; Doc. 16 at ¶ 2. Jess first met with Simonton and Clayton separately so they could both explain their side of the encounter. Doc. 14 at ¶ 16; Doc. 16-1 at 1–2. Next, Jess, Sioux Steel Chief Operation Officer Mike Steele (Steele), and Operations Manager Shane Weber (Weber) interviewed two employees who witnessed the encounter. Doc. 14 at ¶ 17. Doc. 16-1 at 2–3. One employee reported during the interview that he perceived Clayton as being "out of line" with Simonton based on her tone and interaction with Simonton, and at one point, it appeared Clayton took steps towards Simonton which prompted Simonton to send out the facility-wide page.[6] Doc. 14 at ¶ 19; Doc. 16-1 at 2.

---

[6] Clayton contends she was standing in front of Simonton's desk, starting to walk away, when she turned around and stated that Simonton should stop telling people she is not training her. Doc. 15-1 at 18. Then, Simonton sent out the page. Doc. 15-1 at 18. What was said and done during this encounter on March 26, 2017, involves disputed facts, and for purposes of this opinion, this Court views the facts in the light most favorable to Clayton. However, what the employees reported happened to HR is not genuinely disputed facts.

The other employee reported that Clayton was "pissed" and "she was very rude when working with Jean [Simonton]." Doc. 21 at ¶ 19. Doc. 16-1 at 3.

That same day, Clayton, Simonton, Steele, Weber, Production Supervisor Terry Luden (Luden), and Jess met to discuss the incident. Doc. 14 at ¶ 22; Doc. 16-1 at 3; Doc. 15-1 at 19–20. Simonton expressed during the meeting how she did not feel safe around Clayton based on how the encounter that morning escalated. Doc. 14 at ¶ 22; Doc. 16-1 at 3. Simonton added that the encounter was not the first time Clayton raised her voice or had shown anger or rage towards her. Doc. 14 at ¶ 24; Doc. 16-1 at 3. Clayton responded that she used her normal voice and did not think others would perceive it as being loud. Doc. 14 at ¶ 25; Doc. 16-1 at 3.

At the end of the meeting, Steele told Simonton and Clayton not to communicate with each other while the investigation continued into the matter. Doc. 15-1 at 20; Doc. 16-1 at 4. Clayton specifically recounted that Steele stated, "if we saw each other in the hallway, one is supposed to go the other way." Doc. 14 at ¶ 27; Doc. 19 at ¶ 27. Later that same day and on the following day of March 27, 2015, Clayton sent several emails to Simonton. Doc. 14 at ¶ 28; Doc. 15-1 at ¶ 28; Doc. 19 at ¶ 5. Clayton admits that she contacted and communicated with Simonton even though Steele told her not to. Doc. 14 at ¶ 29; Doc. 19 at ¶ 29. Simonton reported to HR and management that Clayton continued to contact her through email. Doc. 14 at ¶ 30; Doc. 16-2 at 5.

On March 27, 2015, Jess, Weber, and Shipping Supervisor Travis Finn (Finn) met with Clayton. Doc. 14 at ¶ 31; Doc. 19 at ¶ 31. They told Clayton that they finished their investigation and had decided to terminate her employment. Doc. 14 at ¶ 32; Doc. 19 at ¶ 32. Sioux Steel decided to terminate Clayton's employment for insubordination due to Clayton violating a directive not to communicate with Simonton, as well as for having multiple incidents where co-

workers felt threatened or uncomfortable by her comments.[7] Doc. 14 at ¶ 33; Doc. 15-2 at 9; Doc. 19 at ¶ 33. Before the incident with Simonton, Clayton had a series of write-ups and warnings for behavioral issues at Sioux Steel. Doc. 14 at ¶ 41; Doc. 19 at ¶ 41. Sioux Steel had previously warned Clayton about unprofessional conduct and violating workplace policies. Doc. 14 at ¶ 41; Doc. 19 at ¶ 41. The same day Clayton was terminated, Simonton's employment also was terminated as part of a reduction in force based on a decision made before the March 26, 2017 incident. Doc. 14 at ¶ 35; Doc. 19 at ¶ 35.

On May 29, 2015, Clayton filed a Charge of Discrimination with the Sioux Falls Human Relations Commissions alleging sexual discrimination against Sioux Steel. Doc. 1 at ¶ 5; Doc. 14 at ¶ 51; Doc. 19 at ¶ 51. Clayton claimed that she had been subject to sexual harassment while employed at Sioux Steel, but made no mention of racial discrimination or harassment. Doc. 14 at ¶ 52; Doc. 19 at ¶ 52. The Human Relations Commission made a no-probable-cause finding. Doc. 14 at ¶ 53; Doc. 19 at ¶ 53. On September 30, 2016, the Equal Employment Opportunities Commission (EEOC) issued Clayton a notice of the right to file suit within 90 days. Doc. 14 at ¶ 53; Doc. 19 at ¶ 53.

Clayton then filed this suit against Sioux Steel under Title VII, asserting claims for racial discrimination, sex discrimination, sexual harassment, and retaliation. Doc. 1. Clayton sought compensatory damages, all damages allowed under Title VII, punitive and exemplary damages, as well as attorney fees and costs. Doc. 1 at 6. Sioux Steel has moved for summary judgment on all claims. Doc. 13.

## II.    Standard of Review

---

[7] Although Clayton asserts that Sioux Steel purposely placed Clayton and Simonton in close proximity knowing there would be a conflict, as part of a concocted scheme to terminate her, Doc. 20 at 2, she has not offered evidence to create a genuine dispute of material fact on this issue.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); see also Reasonover v. St. Louis Cty., 447 F.3d 569, 578 (8th Cir. 2006) ("Evidence, not contentions, avoids summary judgment.") (quoting Mayer v. Nextel W. Corp., 318 F.3d 803, 809 (8th Cir. 2003)). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Cases alleging discrimination are subject to the same summary judgment standard as any other case. Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

## III. Discussion

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against employees with respect to their "compensation, terms, conditions, or privileges of employment,

because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer is also prohibited from retaliating against an employee because the employee "opposed any practice made an unlawful employment practice by" the provisions of Title VII. Id. § 2000e-3(a). Clayton may avoid summary judgment on her claims by either offering direct evidence of discrimination or using the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework to create an inference of discrimination. Blake v. MJ Optical, Inc., 870 F.3d 820, 825–26 (8th Cir. 2017). Clayton does not assert, nor does the record suggest, direct evidence of discrimination. Docs. 1, 20. Rather, Clayton argues her claims under the McDonnell Douglas burden-shifting analysis. Docs. 1, 20; see DePriest v. Milligan, 823 F.3d 1179, 1185 (8th Cir. 2016).

Under the burden-shifting framework set forth in McDonnell Douglas, the plaintiff must first demonstrate a prima facie case of discrimination. Macklin v. FMC Transp., Inc., 815 F.3d 425, 427–28 (8th Cir. 2016); Erenberg v. Methodist Hosp., 357 F.3d 787, 791–92 (8th Cir. 2004). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993); see also Jones v. City of St. Louis, 825 F.3d 476, 480 (8th Cir. 2016). If the defendant does so, the burden shifts back to the plaintiff to establish that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quoting Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)); see also Rooney v. Rock-Tenn Converting Co., 878 F.3d 1111, 1116 (8th Cir. 2018) (stating the employee must prove pretext by "a preponderance of the evidence"). Despite the burden-shifting nature of the McDonnell Douglas framework, the ultimate burden of proving unlawful discrimination remains with the plaintiff. St. Mary's Honor Ctr., 509 U.S. at 507. Clayton's allegations that Sioux Steel violated Title VII by discriminating against her

based on her race, sex, creating a hostile work environment, and retaliation are analyzed separately below.

## A.     Racial Discrimination and Racial Harassment

Sometime during her employment, Clayton advised Sioux Steel that she is Native Hawaiian or other Pacific Islander.  Doc. 6 at ¶ 8.  Clayton alleged that she was subject to racial discrimination and racial harassment when a co-worker entered the office where Clayton and other co-workers were working and asked, "Who's the HNIC?" and then asked, "Who's the head nigger in charge?"  Doc. 15-1 at 32.  Sioux Steel argued that Clayton failed to administratively exhaust the racial discrimination and racial harassment claims because she only checked the "sex" box in her Charge of Discrimination filed with the Department of Human Relations and forwarded to the EEOC.[8]  Doc. 17 at 9–10.  In her response brief, Clayton argued that she exhausted her administrative remedies because the race claims are reasonably related to the sex claims.  Doc. 20 at 3–4.

Before bringing suit, Title VII plaintiffs must timely file a charge with the EEOC or state or local agency.  42 U.S.C. § 2000e-5(e)(1); see also Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 919 (8th Cir. 2018); Hutton v. Maynard, 812 F.3d 679, 683 (8th Cir. 2016).  Section 2000e-5(e)(1) provides that the charge must include "the date, place and circumstances of the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e)(l).  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850–51 (8th Cir. 2012) (per curiam) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)); see also Jones, 825 F.3d at 482.

---

[8] Sioux Steel preserved this affirmative defense in its Answer.  Doc. 6 at ¶ 20–21.

In her Charge of Discrimination filed with the Sioux Falls Department of Human Relations and forwarded to the EEOC, Clayton checked the box for "sex" as her basis for discrimination, but did not check the box for "race." Doc. 1 at ¶ 5; Doc. 1-1 at 1. Similarly, the narrative portion of Clayton's charge asserts that her claim was for "sex[ual] harass[ment] for being a female" only. Doc. 1-1 at 1. Because Clayton did not make claims based on race in her administrative charge, summary judgment for Sioux Steel is warranted on Clayton's race claims for her failure to exhaust her administrative remedies before bringing this suit. Richter, 686 F.3d at 849–51 (affirming dismissal of retaliation claim for failure to exhaust administrative remedies because plaintiff's EEOC charge alleged adverse employment action based on sex and race but civil complaint alleged different "discrete act" of retaliation); Brooks v. Midwest Heart Grp., 655 F.3d 796, 801 (8th Cir. 2011) (finding employee failed to exhaust remedies with the EEOC with regard to her claims of age discrimination and retaliation because EEOC charge only mentioned discrimination on the basis of race and sex, and the boxes for age and retaliation discrimination remained unchecked); Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 989–90 (8th Cir. 2011) (holding that plaintiff who filed an EEOC charge alleging retaliation did not exhaust his administrative remedies for sex discrimination claim where EEOC charge left sex discrimination box unchecked, only alleged retaliation, and never mentioned sex); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222–23 (8th Cir. 1994) (holding that the district court did not err in granting employer's motion for summary judgment because employee failed to exhaust administrative remedies where only the retaliation box was checked on original EEOC claim and plaintiff later sought to argue race discrimination); see also Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015) ("Although we have often stated that we will liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that there is a difference between liberally reading a claim

12

which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." (internal quotation marks and quotation omitted)). Thus, summary judgment will enter for Sioux Steel on Clayton's racial discrimination and racial harassment claims.

### B.    Sex Discrimination

#### 1.    Prima Facie Case

Clayton asserts a claim for sex discrimination under Title VII. In order to prove a prima facie claim of sex discrimination, a plaintiff must show (1) she is a member of a protected class, (2) she was qualified to perform her job, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently). Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). Neither party disputes that Clayton is a member of a protected class. Doc. 1 at ¶ 24; Doc. 17 at 17–18. However, the basis for Clayton's sex discrimination claim is less than clear. "[A] party opposing a motion for summary judgment may not rest upon the mere allegations or denials of the pleadings, but by affidavits or as otherwise provided in Rule 56 must set forth specific facts showing that there is a genuine issue for trial." Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999) (quoting Dancy v. Hyster Co., 127 F.3d 649, 653 (8th Cir. 1997)). In Clayton's brief opposing summary judgment, she made arguments under the headings "Retaliation," "Administrative Remedies," and "Actionable Claim of Sexual or Racial Harassment." None of her arguments, however, establish a prima facia case for her sex discrimination claim or cite to particular materials in the record supporting the existence of a genuine dispute of material fact on a sex discrimination claim. See Fed. R. Civ. P. 56(c)(1); Gacek, 666 F.3d at 1145. Simply put, the circumstances do not give rise to an inference of sex discrimination by Sioux Steel against Clayton.

Clayton cannot show that a similarly situated employee outside of her protected class was treated differently. "While '[t]he burden of establishing a prima facie case of disparate treatment is not onerous,' the plaintiff must be able to produce some evidence of similarity between her and her comparator." Rebouche v. Deere & Co., 786 F.3d 1083, 1087–88 (8th Cir. 2015) (quoting Torgerson, 643 F.3d at 1047). For comparator evidence, Clayton must prove that she was "similarly situated [with an employee] in all relevant respects." Young v. Builders Steel Co., 754 F.3d 573, 578 (8th Cir. 2014) (quoting Chappell v. Bilco Co., 675 F.3d 1110, 1119 (8th Cir. 2012)); see also Bone v. G4S Youth Servs., 686 F.3d 948, 956 (8th Cir. 2012). The test to determine whether employees are similarly situated to warrant a comparison to the plaintiff is a strict and rigorous one. Smith v. URS Corp., 803 F.3d 964, 970 (8th Cir. 2015); Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Bone, 686 F.3d at 956 (alteration in original) (quotation omitted).

Clayton has failed to produce comparator evidence because she has not shown that any employee was similarly situated to her and was treated differently. Because Clayton has presented no evidence that a male employee violated a directive to not communicate with another employee during an investigation, there is no evidence to consider that another employee is similarly situated to Clayton. See Bone, 686 F.3d at 956 (finding that employee was not similarly situated with other employees because there were mitigating differences between the two groups—employee was accused of resisting directives where other employees were not); Rebouche, 786 F.3d at 1087–88 (affirming district court's finding that female plaintiff failed to establish a prima facie case of sex discrimination where she could not show similarity with another male employee, and several other

14

men who were similarly situated with her remained in same employment grade). Nor has Clayton

offered any other evidence that gives rise to an inference of unlawful employment discrimination.

Clayton has thus failed to establish a prima facie case of sex discrimination.

### 2. Legitimate, Nondiscriminatory Reason

Even if Clayton could establish a prima facie claim of sex discrimination, Sioux Steel has

shown that it had a legitimate, nondiscriminatory reason for the adverse action. Sioux Steel's

stated reasons for terminating Clayton—its determination that Clayton continued to communicate

with Simonton after she was directed not to do so during the investigation, in conjunction with

Clayton's past write-ups and conduct—satisfy this standard. See Bone, 686 F.3d at 954; see also

Henry v. Hobbs, 824 F.3d 735, 739 (8th Cir. 2016) (finding employer showed a legitimate,

nondiscriminatory reason for terminating employee where employer stated that it terminated

employee because the employee violated department policy by making false statements and

improperly allowed inmate into restricted area); Johnson v. Ready Mixed Concrete Co., 424 F.3d

806, 811 (8th Cir. 2005) ("If the employer was motivated by a good faith belief that [the employee]

was dishonest, then it was not motivated by [the employee's] race, even if the conclusion about

timing [of the employee's conduct] was erroneous."). Because none of the justifications for

termination were related to sex, Sioux Steel has articulated a legitimate, nondiscriminatory reason

for its decision. Thus, the burden would shift back to Clayton to show that Sioux Steel's asserted

justifications "were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S.

at 143 (quoting Tx. Dep't of Cmty. Affairs, 450 U.S. at 253).

### 3. Pretext

To demonstrate pretext, Clayton "must both discredit the employer's articulated reason and

demonstrate the 'circumstances permit a reasonable inference of discriminatory animus.'"

Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014) (quoting Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012)). More substantial evidence of discrimination is required to prove pretext at this stage, as compared to the minimal showing required to establish a prima facie case, "because evidence of pretext is viewed in the light of [the employer's] legitimate, non-discriminatory explanation." Jones v. United Parcel Service, Inc., 461 F.3d 982, 992 (8th Cir. 2006). "To succeed at this stage of the McDonnell Douglas analysis, [an employee] must prove that the prohibited reason was a determinative factor in [the employer's] decision to terminate."[9] Id. The Eighth Circuit has stressed that federal courts are not to act as "super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Cronquist, 237 F.3d at 928 (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)). "[E]mployers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices." Hervey v. Cty. of Koochiching, 527 F.3d 711, 720 (8th Cir. 2008) (quoting Edmund v. MidAmerican Energy Co., 299 F.3d 679, 685–86 (8th Cir. 2002)), see also McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861–62 (8th Cir. 2009) ("The critical inquiry . . . is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.")

Clayton has not produced evidence that Sioux Steel's termination of her employment was based on her sex, rather than on Clayton's disobedience of a directive not to communicate with her co-worker Simonton during an investigation of Clayton's alleged intimidations of Simonton,

---

[9] Clayton may also show pretext by showing that Sioux Steel failed to follow its own policies or shifted its explanation for the employment decision. Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010). Clayton has failed to present such evidence.

Clayton's prior conduct, and Clayton's past employment write-ups.  See Henry, 824 F.3d at 739–40 (finding that employee did not meet his pretext burden partly because employee introduced no evidence that proffered similarly situated employee also made false statements or was required to take the same truthfulness test); Ready Mixed Concrete Co., 424 F.3d at 810–11 (holding plaintiff was not similarly situated to coworkers when he "identifie[d] no evidence" that the employer believed the coworkers engaged in similar misconduct); Cronquist, 237 F.3d at 928 (granting summary judgment for defendant because plaintiff did not point to another employee who "engaged in conduct that was of 'comparable seriousness'" to plaintiff's).  The record, when viewed in the light most favorable to Clayton, does not raise a genuine dispute issue of material fact to suggest that Sioux Steel's legitimate, nondiscriminatory rationale for Clayton's termination was a pretext for discrimination.  Accordingly, Sioux Steel is entitled to summary judgment on Clayton's sex discrimination claim.

C.      **Hostile Work Environment**

Clayton alleged that she was subject to a hostile work environment because of her sex.  Doc. 1 at ¶ 29.  The Supreme Court has held that Title VII is violated when an employee is subjected to a hostile work environment.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  To establish a prima facie claim of a hostile work environment, a plaintiff must prove: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take appropriate remedial action."[10]  Nichols v. Tri-Nat'l Logistics, Inc., 809 F.3d 981, 985 (8th Cir. 2016).  "The

---

[10] The Eighth Circuit has explained that the fifth element requiring that the employer knew or should have known of the harassment is required "[w]hen the alleged harasser is the plaintiff's fellow employee" but does not apply to allegations of "supervisory harassment."  Ryan v. Capital

term 'hostile work environment' is sometimes used to describe a claim that an employer's harassment was so severe or pervasive as to alter effectively the conditions of the plaintiff's employment because of her sex." McMiller v. Metro, 738 F.3d 185, 188 (8th Cir. 2013) (per curiam).

The Supreme Court has made it clear that that Title VII is not a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). "The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). The standards for a hostile work environment claim are stringent and meant to "filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language . . . and occasional teasing." Faragher, 524 U.S. at 788 (citations and internal quotation marks omitted).

Here, Clayton, in her reply brief opposing summary judgment, contends that she "described the behavior she was subjected to over the years, in her deposition." Doc. 20 at 4. "[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" Jaurequi, 173 F.3d at 1085 (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990)); see also Crossley v. Georgia-Pac. Corp., 355 F.3d 1112, 1114 (8th Cir. 2004) (per curiam). Clayton does not meet the Rule

---

Contractors, Inc., 679 F.3d 772, 778 (8th Cir. 2012). An employer is vicariously liable for harassment by a supervisor, but in order to be considered a supervisor, "the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." Id. at 778–79. Clayton's complaint avers that the alleged harasser was the plaintiff's fellow employee. She does not argue that the incident where Supervisor Ron accused her of engaging in sexual activities with men in the woman's restroom at work should be analyzed as sexual harassment by a supervisor. Indeed, Clayton has not argued that Ron had the power to take tangible employment actions against her.

56 specificity requirement by merely referencing a deposition and "inviting the district judge to read [it] . . . without designating which specific facts contained therein created a genuine issue as to pretext or established a reasonable inference of [a hostile work environment]." Crossley, 355 F.3d at 1114.

Notwithstanding the specificity requirement not being met, this Court read what appears as Clayton's deposition transcript in the record. The behavior described by Clayton in the deposition is insufficient to establish a prima facie case of harassment. Clayton contends she was subject to the following harassing conduct related to sex: 1) an employee spread a rumor about Clayton having affairs, Doc. 1 at ¶ 10; Doc. 15-1 at 26, 2) an employee accused Clayton of engaging in sexual activities with men in the woman's restroom at work, Doc. 1 at ¶ 10; Doc. 15-1 at 26, and 3) an employee asked Clayton if she was a lesbian, Doc. 1 at ¶ 10; Doc. 15-1 at 32. Clayton in briefing acknowledges, "[a]nalyzing each event individually may not demonstrate a pervasive atmosphere, but when take [sic] as a whole, they certainly do." Doc. 20 at 4. Clayton also alleged that other behavior outlined in her deposition constitutes harassment. However, these incidences—such as employees taking candy out of her desk and a supervisor telling employees that she broke the leg of one of his drivers—were not related to sex in any way. Even taking all of this together, Clayton has failed to establish a prima facie case on her hostile work environment claim because she has failed to prove that any harassment was "so severe or pervasive as to alter effectively the conditions of [her] employment because of her sex." Metro, 738 F.3d at 188. Clayton has not come forward with sufficient evidence that Sioux Steel treated her differently based on her sex. See Hervey, 527 F.3d at 721–22 (reciting a list of actions that supervisors took against employee, including criticisms, yelling, and requiring daily reporting, and then alleging that those actions were "taken because [the employee] is a woman . . . is insufficient evidence to

support an inference of discrimination"). "Whether harassing conduct constitutes discrimination based on sex is determined by whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 965 (8th Cir. 1999). A plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'" Oncale, 523 U.S. at 81 (alteration in original). Clayton has made no such showing.

Clayton also has not come forward with evidence that any alleged sexual discrimination affected a term, condition, or privilege of her employment as Sioux Steel. In order for harassment to affect a term, condition, or privilege of employment, the "harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive." Williams v. Herron, 687 F.3d 971, 975 (8th Cir. 2012) (quoting Erenberg, 357 F.3d at 792). "[C]ourts make this determination by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Erenberg, 357 F.3d at 792 (internal quotation marks and citation omitted); see also LeGrand v. Area Res. for Cmty. & Human Servs., 394 F.3d 1098, 1102 (8th Cir. 2005). In this case, there was no physical touching, and the sexual comments were infrequent and not severe. Clayton has made no showing that these three incidents unreasonably interfered with her work performance, in that Clayton only heard each of these three comments one time over about a two-year period. Doc. 15-1 at 25–32. Indeed, Clayton even received what she considered to be a promotion after the incidents. Doc. 15-1 at 32; see Johnson v. Gateway, Inc., No. CIV. 04-4186-KES, 2007 WL 1231657, at *6 (D.S.D. Apr. 24, 2007) (finding that harassment did not affect

20

a term, condition, or privilege of plaintiff's employment where the "alleged behavior had a minimal effect on [the employee's] work performance" and because employee continued to capably perform job duties until dismissed).

Under the totality of the circumstances, Clayton's allegations, even when the facts are viewed in a light most favorable to her, do not amount to conduct that is so severe or pervasive to indicate that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult." Sutherland v. Mo. Dep't of Corrs., 580 F.3d 748, 751 (8th Cir. 2009) (quoting Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002)). The Eighth Circuit has rejected many hostile work environment claims involving much more egregious conduct than what Clayton has presented or even alleged here. See, e.g., Abdel-Ghani v. Target Corp., 686 Fed. Appx. 377, 378–79 (8th Cir.) (per curiam), cert. denied, 138 S. Ct. 362 (2017) (no hostile work environment when employees called plaintiff names like "camel jockey, Muslim, Arab, terrorist, and sand nigger" approximately ten times in a two-month period because plaintiff did "not shown that any of these comments interfered with his work performance"); Alvarez v. Des Moines Bolt Supply, 626 F.3d 410, 420 (8th Cir. 2010) (finding sexually oriented remarks by female employee's co-workers did not create a hostile environment where comments about female employee's breasts were made on several occasions and where one co-worker told female employee that he was fixing a table so she could "strip dance on it"); LeGrand, 394 F.3d at 1100–03 (no hostile work environment created by defendant's unwelcome sexual advances on three separate occasions over a nine-month period, including asking the employee to watch pornographic movies with him, hugging and kissing, grabbing the employee's buttocks, and "brushing" of the employee's genitals with the back of defendant's hand); Tuggle v. Mangan, 348 F.3d 714, 716–18, 722 (8th Cir. 2003) (no hostile work environment based on defendant's inappropriate sexual and physical comments, taking a

photograph of plaintiff's rear end, and giving plaintiff undesirable work assignments). The conduct alleged by Clayton was not sufficiently severe or pervasive as to meet Title VII's standards.

Clayton also has failed to show that Sioux Steel knew or should have known of the employees' harassing conduct and failed to take remedial action. Clayton did not report the rumor about her having affairs or the rumor about her engaging in sexual activities at work. Additionally, after Sioux Steel found out about the lesbian comment, it took appropriate remedial action by issuing the employee who asked Clayton if she was a lesbian a Final Conduct Corrective Action for sharing rumors and disrupting the workplace. Because no reasonable juror could find, even when viewing the facts in the light most favorable to Clayton, that Clayton was subject to a hostile work environment, Sioux Steel is entitled to summary judgment on this claim as well.

**D.      Retaliation Claim**

Clayton alleged that she was retaliated against when she internally reported to Sioux Steel that employees were discriminating against her. Doc. 1 at ¶ 37. For a retaliation claim under Title VII, Clayton has the initial burden of showing that: (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse employment action was causally linked to the protected activity. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011). Clayton at all times retains the ultimate burden of proving that an impermissible retaliatory motive was the "but-for" cause of the adverse employment action. Donathan v. Oakley Grain, Inc., 861 F.3d 735, 739–40 (8th Cir. 2017) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013)). After establishing a prima facie case, the standard McDonnell Douglas burden-shifting analysis applies to a retaliation claim. See Pye, 641 F.3d at 1021.

Clayton contends that she engaged in protected activity when she internally reported to Sioux Steel various comments employees of Sioux Steel made to her, as well as some of the employees' behavior. Doc. 1 at ¶ 36. Under Title VII, an employer is prohibited from discriminating against an employee who "has opposed any practice made an unlawful employment practice by" the provisions of Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." Barker v. Mo. Dep't of Corr., 513 F.3d 831, 834 (8th Cir. 2008) (quoting Gilooly v. Mo. Dep't of Health & Senior Servs., 421 F.3d 734, 741 (8th Cir. 2005) (Colloton, J., concurring)). There is no evidence that Clayton "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII before her claimed adverse employment action of termination. See 42 U.S.C. § 2000e–3(a). Clayton's claim thus involves the opposition clause because she claimed that Sioux Steel retaliated against her for internal reporting to a supervisor, manager, or HR department.

The Eighth Circuit has expanded the opposition clause to include not only unlawful employment practices, but also lawful employment practices "as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." Barker, 513 F.3d at 834 (quoting Gilooly, 421 F.3d at 742 (Colloton, J., concurring)). The reasonableness of the employee's belief is measured against "the applicable substantive law." Brannum v. Mo. Dep't of Corr., 518 F.3d 542, 549 (8th Cir. 2008).

Clayton identifies three incidents in her briefing and otherwise that she reported to a supervisor, manager, or HR. First, Clayton reported that a co-worker asked her if she cheated in a weight loss challenge. Doc. 15-1 at 27; Doc. 20 at 3. Second, Clayton reported that co-workers

were smoking on the property which was a designated nonsmoking property and gave HR pictures she took of the cigarette butts. Doc. 15-1 at 31; Doc. 20 at 3. Third, Clayton said that she was going to report to HR the incident where Wulf asked if she was a lesbian because Brown told him she was, but Brown reported the incident first after Clayton confronted him in a way he perceived as threatening. Doc. 20 at 2–3, Doc. 15-1 at 29. Clayton experienced an adverse employment action of termination on March 27, 2015. Doc. 1 at ¶ 37; Doc. 20 at 3.

There is no evidence that Clayton believed that someone asking her if she was caught cheating in a weight loss challenge, seeing evidence of employees smoking on the premises, and being asked once by a co-worker if she was a lesbian were unlawful employment practices. See Doc. 15-1 at 34. Indeed, Clayton admitted in her deposition that she has "no idea" how the weigh-in-challenge cheating allegation relates to sex discrimination. Doc. 15-1 at 27. Clayton characterized her report of the employees smoking on the premises as "violations of the company policy," Doc. 20 at 2, and was neither conduct directed at Clayton, nor any type of discrimination against her because of sex. Her lack of belief that the lesbian comment was an unlawful employment practice is illustrated by the fact that she confronted Brown herself instead of reporting the comment to HR. Even if Clayton believed this conduct violated Title VII, she points to no evidence that she communicated this belief to HR or a supervisor. The Supreme Court has held that an employee's retaliation claim based on employee internal complaints will be precluded if no reasonable person could have believed that the complained of conduct violated Title VII. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001). No reasonable person could have believed that these isolated incidents about cheating in a weight loss challenge, employees smoking on the premises, and an employee asking if she was a lesbian violated Title VII's standard.

See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (stating that a "simple lack of good manners" is not actionable under Title VII).

Even if Clayton proved that she engaged in protected activity, she has not shown a causal link between the adverse employment action of her termination and the protected activity. The Supreme Court has emphasized that "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." Liles v. C.S. McCrossan, Inc., 851 F.3d 810, 819 (8th Cir. 2017) (quoting Blomker v. Jewell, 831 F.3d 1051, 1059 (8th Cir. 2016)). An impermissible retaliatory motive must be the "but-for" cause of the adverse employment action. Donathan, 861 F.3d at 739–40 (quoting Nassar, 570 U.S. at 352). Clayton suffered an adverse employment action when she was terminated after violating a directive not to communicate with Simonton during Sioux Steel's investigation. Sioux Steel's proffered reason for terminating Clayton's employment was her violation of the directive, as well as Clayton's past incidents where co-workers felt threatened by or uncomfortable with her. Doc. 14 at ¶ 33; Doc. 15-2 at 9; Doc. 19 at ¶ 33. Clayton contends that this stated reason for her termination was fabricated. Doc. 1. Clayton speculates that Sioux Steel thought Clayton was a "challenge to the general order in the workplace" so Sioux Steel purposely put Clayton and Simonton together, knowing there would be friction in order to have a reason to terminate Clayton. Doc. 20 at 1–3. However, Clayton has not put forth evidence in support of this hypothesis or to suggest that her reports to HR were a substantial or motivating factor for her termination, let alone that her reports to HR were the "but-for" cause of her termination. Mere allegations that are unsupported by "evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas, 483 F.3d at 527. Because no reasonable juror could find, even when viewing the facts in the light most favorable to Clayton, that Clayton was subject to retaliation for engaging

in behavior protected by Title VII, Sioux Steel is entitled to summary judgment on the retaliation claim.

**IV.    Conclusion**

For the reasons explained above, it is hereby

ORDERED that Sioux Steel's Motion for Summary Judgment, Doc. 13, is granted.

DATED this 22nd day of October, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE